# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00249-CV

**Texas Lottery Commission, Appellant**

**v.**

**First State Bank of DeQueen, Stone Street Capital, Inc. and Cletius L. Irvan, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-06-004663, HONORABLE DERWOOD JOHNSON, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

A quintessential legislative function is the ordering of competing social policies. In the same legislative session, the Texas legislature amended two statutes—the Texas version of Article 9 of the Uniform Commercial Code and the State Lottery Act. The amended statutes conflict as to the assignability of state lottery winnings paid by the Texas Lottery Commission. Because the amendments to the lottery act address and reflect the legislature's policy determination of the specific issue at hand, the assignability of state lottery installment prize payments, I would hold the lottery act controls this appeal's disposition and reverse the trial court. Accordingly, I respectfully dissent.

In 1999, the legislature amended the lottery act to allow a prize winner to assign his right to receive prize payments that are to be paid by the Commission over time if the winner complies with certain requirements, including obtaining the approval of a Travis County district court. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1394, §§ 2, 4, 1993 Tex. Gen. Laws 4717-20

(codified at Tex. Gov't Code Ann. §§ 466.406, .410 (West 2004)).[1] Prior to the 1999 amendments, a recipient of lottery prize payments to be paid by the Commission was prohibited from assigning the rights to the payments except to the estate of a deceased prize winner or pursuant to an "appropriate judicial order." *See* Act of April 28, 1993, 73rd Leg., R.S., ch. 107, § 4.03, 1993 Tex. Gen. Laws 195, 225 (former Tex. Gov't Code Ann. § 466.406). Under the 1999 amendments, a lottery prize winner remains prohibited from assigning "installment prize payments due within the final two years of the prize payment schedule." *See* Tex. Gov't Code Ann. § 466.410(a).

In the same 1999 legislative session but prior to the enactment of the lottery act amendments, the legislature amended the Texas version of article 9 of the Uniform Commercial Code on secured transactions, including revising the definition of "account" to include "a right to payment of a monetary obligation . . . as winnings in a lottery or other game of chance operated or sponsored by a state, governmental unit of a state, or person licensed or authorized to operate the game by a state or governmental unit of a state." *See* Act of May 17, 1999, 76th Leg., R.S, ch. 414, § 1.01, 1999 Tex. Gen. Laws 2639, 2640 (codified at Tex. Bus. & Com. Code Ann. § 9.102(a)(2)(viii) (West Supp. 2007)).[2] Because the right to a state lottery prize payment is included within the amended definition of "account," the right is subject to UCC provisions concerning

---

[1] The lottery act defines lottery to mean "the procedures operated by the state under this chapter [466] through which prizes are awarded or distributed by chance among persons who have paid, or unconditionally agreed to pay, for a chance or other opportunity to receive a prize." Tex. Gov't Code Ann. § 466.002(5) (West 2004).

[2] The definition of "account" referencing winnings in a lottery is in the section titled "Definitions and Index of Definitions." *See* Act of May 17, 1999, 76th Leg., R.S, ch. 414, § 1.01, 1999 Tex. Gen. Laws 2639, 2640 (codified at Tex. Bus. & Com. Code Ann. § 9.102 (a)(2)(viii) (West Supp. 2007)).

accounts. One such provision is section 9.406 that allows a party to assign its rights under an "account" without the consent of the debtor or the government. *See id.*, 1999 Tex. Gen. Laws at 2697-98 (codified at Tex. Bus. & Com. Code Ann. § 9.406(a), (f) (West 2002)). The parties agree that section 9.406, as applied to a right to a lottery prize payment to be paid by the Commission, conflicts with the requirements set out in the amended lottery act sections 466.406 and 466.410 that limit or prohibit the assignment of lottery prize payments. This Court must therefore resolve this conflict.

The majority resolves this conflict by its interpretation of the plain meaning of the statutes' texts. *See Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). Relying on section 9.406(f) that renders ineffective statutes that restrict, prohibit or require governmental consent before an "account" may be assigned, the majority resolves the conflict by concluding that "the legislature has clearly and unambiguously provided a means on resolving the inconsistency between the lottery act and the UCC." *See* Tex. Bus. & Com. Code Ann. § 9.406(f). The majority also concludes that if the rule of statutory construction that, when in conflict, a specific provision controls over a general one is relevant, it also requires the UCC provision to control. *See* Tex. Gov't Code Ann. § 311.026(b) (West 2005). The majority concludes that section 9.406(f) controls because it "specifically addresses conflicts between article 9 and assignability restrictions under other Texas law." *See id*.

I disagree with the majority's conclusions and construction of the two competing statutes. Surely, the majority's conclusion that the statutes' language is either clear or unambiguous or that "ordinary citizens are able to rely on the plain language to mean what it says" is largely a

3

fiction here. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 860 (Tex. 2005); *see also* Tex. Gov't Code Ann. § 311.023 (West 2005) (courts may consider, among other matters, the object sought to be attained, the circumstances under which the statutes were enacted, the legislative history, and the consequences of a particular construction when construing a statute, whether or not statute is considered ambiguous on its face); *State of Texas v. Preslar*, 751 S.W.2d 477, 481 (Tex. 1988).

The amendment to the Texas version of Article 9 was characterized as "relating to the revision of the uniform law on secured transactions." *See* 1999 Tex. Gen. Laws at 2639. The UCC's underlying purposes are to "simplify, clarify and modernize the law governing commercial transactions," "to permit the continued expansion of commercial practices through custom, usage and agreement of the parties," and "to make uniform the law among the various jurisdictions." *See* Tex. Bus. & Com. Code Ann. § 1.103 (West Supp. 2007). In contrast, the substantive issue the legislature addressed in the lottery act amendments was specifically expressed as "the assignment or deposit of certain lottery prizes." *See* 1999 Tex. Gen. Laws at 4717.

Comment 3 to section 1.103 of the UCC, the section that addresses the UCC's underlying policies, is instructive. *See* Tex. Bus. & Com. Code Ann. §1.103, comment 3 (West Supp. 2007). This comment provides guidance to courts faced with a conflict between the UCC and another state statute that protects a specific class of individuals, concluding that, in this situation, a court should hold that the other state statute controls:

> In other situations, however, other interpretative principles addressing the interrelationship between statutes may lead the court to conclude that the other statute is controlling, even though it conflicts with the Uniform Commercial Code. This, for

4

example, would be the result in a situation where the other statute was specifically intended to provide additional protections to a class of individuals engaging in transactions covered by the Uniform Commercial Code.

*Id*. This principle is directly applicable here. By allowing only limited assignments, the lottery act amendments provide "additional protections to a class of individuals engaging in transactions covered by the Uniform Commercial Code"—i.e., state lottery prize winners. *See id.*; House Research Organization, Bill Analysis, Tex. H.B. 1799, 76th Leg., R.S. (1999) ("HB 1799 would allow lottery prize winners to assign their winnings under specified conditions designed to ensure that their interest would be protected."). The UCC comment is a classic application of the rule of statutory construction that specific controls over general. *See* Tex. Gov't Code Ann. § 311.026(b).[3] As the more specific statutory provision, the lottery act should control. *Id*.

As the majority recognizes, the consequence of its construction and holding is that the lottery act amendments are rendered ineffective. *See* Tex. Gov't Code Ann. §§ 311.021 (legislature's enactment of statute presumes statute is intended to be effective); 311.023 (West 2005) (courts may consider consequence of particular construction). In contrast, a holding that the lottery act amendments on assignments control is consistent with the legislature's statutory design and intent with regard to the differing purposes of the UCC's provisions on secured transactions and the lottery act. *See* Tex. Gov't Code Ann. § 311.023 (courts may consider object sought to be attained). Under

---

[3] A variation on the rule that the more specific controls over the general is that, to the extent there is a conflict between two statutes, a later, more specific provision prevails over the earlier, more general provision. *See* Tex. Gov't Code Ann. §§ 311.025, 312.014 (West 2005). Although in the same legislative session, the legislature enacted the revisions to Texas's version of Article 9 before enacting the lottery act amendments.

5

this construction, the UCC provisions on the free assignment of accounts remain effective except as to a specific subset of accounts and even a specific subset of lottery winnings—the right to state lottery prize payments to be paid by the Commission, i.e. winnings from the State Lottery Act. *See id*. § 311.026. The lottery act amendments also remain effective: Lottery winners would be free to assign their rights to prize payments from the state in limited circumstances as contemplated by the legislature. The competing social policies are harmonized by giving effect to the uniform law as it applies to an "account" generally and to the specific law concerning the assignment of lottery prize payments from the state.

The legislature, as is its function, directly addressed the competing social policies between freely allowing or limiting assignments of lottery prize payments from the state, reaching its social policy choice that assignments would be allowed, but balancing this choice with built-in protections for lottery winners. I would hold that the lottery act amendments that restrict the assignment of state lottery prize payments control the disposition of this appeal, and I would therefore reverse the judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Filed: May 16, 2008

6